# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ERIC WILLIAMS,

                         Petitioner,               :    Case No. 1:14-cv-235

     - vs -                             District Judge Susan J. Dlott
                                       Magistrate Judge Michael R. Merz

BRIAN COOK, Warden,
 Pickaway Correctional Institution,

                                    :

                      Respondent.

---

# REPORT AND RECOMMENDATIONS

---

      This is a habeas corpus case brought *pro se* by Petitioner Eric Williams to obtain relief from his convictions on four counts of rape and five counts of gross sexual imposition in the Hamilton County Common Pleas Court. Williams pleads the following grounds for relief:

> **Ground One**: Petitioner's U.S. constitutional rights against compulsory self-incrimination and due process were violated when the state trial court overruled his motion to suppress and allowed the jury to consider his recorded statements, rendering the state court judgment contrary to, and involving an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.
>
> **Ground Two:** Petitioner's U.S. constitutional due process right to notice and his right to a fair trial were violated when the trial court denied his motion to dismiss the indictment due to non-specific dates for the alleged offenses, including overruling his trial objections, and by denying his motion for new trial.
>
> **Ground Three**: Petitioner was denied due process and his U.S. constitutional right to a fair trial when the trial court allowed privileged communications to be revealed to the jury.

1

**Ground Four:**  Petitioner was denied his U.S. constitutional rights of due process and fair trial when the prosecution introduced evidence of other bad acts wholly unrelated to the indicted offenses.

**Ground Five:**  Petitioner was denied his U.S. constitutional rights of due process and a fair trial when there was no demonstration of *corpus delicti*.

**Ground Six:**  Petitioner was denied his U.S. constitutional rights of due process and to a fair trial because his convictions are not supported by sufficient evidence, being against the manifest weight of the evidence.

**Ground Seven**:  Petitioner was denied his U.S. constitutional rights of due process and to a fair trial as the result of prosecutorial misconduct.

**Ground Eight:**  Petitioner's multiple convictions and consecutively imposed sentences are in violation of Ohio Rev. Code § 2941.25(A) and the Double Jeopardy Clause of the United States Constitution.

(Petition, Doc. No. 1.)

## Procedural History

On November 18, 2010, the Hamilton County grand jury charged Williams with five instances of sexual misconduct in 1995 with "A.W.," said to have been under thirteen years of age at the time, four instances of vaginal intercourse and one of cunnilingus.  The charges were essentially in the alternative as rape or gross sexual imposition.  After extensive pre-trial motion practice, the case was tried to a jury which convicted Williams on all counts except the rape by cunnilingus count.  The trial judge imposed consecutive ten year sentences for all four rape counts and two years for the gross sexual imposition charge in Count Ten, having merged the

remaining GSI counts with the relevant rape counts.

Williams appealed and the First District Court of Appeals affirmed in all respects. *State v. Williams*, Case No. C-120183 (1st Dist. Mar. 27, 2013)(unreported, copy at Return of Writ, Doc. No. 11-2, PageID 274[1] et seq.).   The Ohio Supreme Court declined jurisdiction over a subsequent appeal and Williams timely filed the instant habeas Petition (Doc. No. 1).   On Magistrate Judge Bowman's Order (Doc. No. 6), the Warden filed a Return of Writ with the state court record (Doc. No. 11) and Williams has filed a Traverse (Reply, Doc. No. 14).

## ANALYSIS

**Ground One:  Admission of Pretrial Statements**

In his First Ground for Relief, Williams asserts the Ohio courts erred in admitting his four pretrial statements in evidence at trial.  As factual background, Williams admits that while living in Richardson, Texas, in 2010 he made incriminating statements that he believed were protected by confidentiality.  Apparently one of the hearers, a Robert Brittain, decided to report the matter to police and Detectives Adam Perry, Kelly McGillis, and Adam Lewin of the Richardson Police Department came to interview Williams in the presence of his fiancée, Marie Martin, on October

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)"  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.

15, 2010 (Traverse, Doc. No. 14, PageID 1317).  None of these people testified at trial except for Detective Perry.  On appeal, Williams argued his admissions to Perry on this occasion were involuntary because Perry said he would "question his neighbors if Williams refused to talk to the police."  (Appellant's Brief, Return of Writ, Doc. No. 11-2, Ex. 24, PageID 237.)  A second statement was taken October 18, 2010.  Williams claimed on appeal this statement was involuntary because police had told him it was not being recorded, but it was anyway.  *Id.* at PageID 238.  No comment is made in the Appellant's Brief about the third statement which Williams notes as having occurred on October 21, 2010 (Traverse, Doc. No. 14, PageID 1317).  Finally, the fourth statement was made on November 22, 2010, after Williams was arrested and was read and waived his *Miranda* rights.  Williams claimed on appeal the waiver was involuntary because he was held and questioned for five to six hours without food or medication (Appellant's Brief, Return of Writ, Doc. No. 11-2, Ex. 24, PageID 238).

This claim was raised in the First Assignment of Error on direct appeal and the First District decided it as follows:

> In his first assignment of error, Williams argues that the trial court erred by denying his motion to suppress his four confessional statements to police. He also argues that the trial court erred by denying his motion for a new trial for the same reason. We disagree. With respect to the first three statements, Williams contends that each of the interviews amounted to a custodial interrogation and, because *Miranda* warnings were not given, all three statements should be suppressed. But a review of the record demonstrates that in all three instances a reasonable person in Williams's position would have believed that he was free to leave and end each interview. Accordingly, these three interviews were not custodial interrogations and thus, *Miranda* warnings were not required. See *State v. Hoffner*, 102 Ohio St.3d 358, 2004-0hio-3430, 811 N.E.2d 48, ¶ 27.

4

> With respect to the final statement given after Williams had been arrested, he asserts that he did not voluntarily waive his *Miranda* rights. Specifically, he maintains that a deprivation of food and medicine during the three-hour interview clouded his judgment. But the video recording of his interview belies this assertion. Thus, under the totality of the circumstances, we cannot say that Williams's waiver of his Miranda rights was made unknowingly, unintelligently or involuntarily. See *State v. Brinkley*, 105 Ohio St. 3d 231, 2005-0hio-1507, 824 N.E.2d 959, ¶ 57. The first assignment of error is overruled.

*State v. Williams, supra*, PageID 274-75.

Williams does not organize his Traverse around his eight Grounds for Relief, but proceeds mostly to argue that the State did not prove territorial jurisdiction (See Traverse, Doc. No. 14, PageID 1316-27).  Williams does offer a page and a half of argument on his Fifth Amendment claims (PageID 1327-28), but offers no record references to any facts which would undercut the First District's factual findings about how the four statements were made.  A state court's findings of fact on a federal claim later the subject of a habeas action are conclusive on the habeas court unless the petitioner demonstrates error by clear and convincing evidence that was part of the record before the state court.  28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011).

Williams argues admission of his statements violated his due process rights, apart from his right to be free of compelled self-incrimination  (Traverse, Doc. No. 14, PageID 1327, relying on *Miller v. Fenton*, 474 U.S. 104 (1985)).  Williams' due process argument is that all four of these are "Kentucky" statements – statements about things that happened in Kentucky – and that using them against him in an Ohio prosecution is what violated his due process rights (Traverse, Doc. No. 14, PageID 1327-28).

It is true that *Miller v. Fenton, supra,* does hold that the voluntariness of a confession is

to be judged on due process standards under the Fourteenth Amendment.  But it does not suggest in any way that the taking of statements by police in Texas violates due process because the person making the statements believes they only relate to acts in Kentucky.  Furthermore, Williams cites no law suggesting that the First District's decision is contrary to or an objectively unreasonable application of any other Supreme Court precedent besides *Miller v. Fenton*. Finally, the Court notes that *Miller* dealt with a version of 28 U.S.C. § 2254(d) which existed prior to adoption of the Antiterrorism and Effective Death Penalty Act in 1996.

Williams' First Ground for Relief should be dismissed.


**Ground Two:  Improper Indictment**


In his Second Ground for Relief, Williams contends the trial court should have dismissed the indictment against him because it gave only non-specific dates for the alleged offenses.  The First District decided this claim as follows:

> In his second assignment of error, Williams contends that the trial court erred by denying his motion to dismiss the indictment because the indictment did not set forth specific dates of the alleged offenses. Williams also argues that the trial court erred in denying his motion for a new trial for the same reason. We find no error.  The indictment indicated that the charged offenses occurred between the dates of Williams's stepdaughter's birth in November 1994, and May 1995, when Williams moved to Kentucky with his stepdaughter and his wife. Importantly, the lack of specific dates did not prejudice Williams in preparing his defense given that he did not deny sexually abusing his stepdaughter, but only that the abuse had occurred in  Ohio. Williams argued that the abuse had not begun until after he had moved to Kentucky in May 1995.  See *State v. Gingell*, 7 Ohio App. 3d 364, 368, 455 N.E. 2d 1066 (1st Dist. 1982).

*State v. Williams, supra*, PageID 275-76.

Williams correctly notes that the Indictment alleges that each act of sexual misconduct occurred "on an undetermined date between April [1995] and October [1995]." (Traverse, Doc. No. 14, PageID 1328; Indictment, Return of Writ, Doc. No. 11-1, Ex. 1, PageID 81-85.)   The time frame in the amended indictment, however, was limited to the period between the victim's birth in November 1994 and the time in May 1995 when Williams married the victim's mother and they all moved to Kentucky.

Both Respondent and Williams rely on *Valentine v. Konteh,* 395 F.3d 626, 631 (6th Cir. 2005), but there the Sixth Circuit upheld an indictment with "fairly large time windows" in a child sexual abuse case and noted that other circuits had also upheld periods of four months to seventeen months.   Judge Merritt in *Valentine* noted the need to accommodate indictment requirements in such cases to the difficulties young child victims have in being specific about dates.   That consideration would be especially applicable to a case such as this where all the abuse alleged to have occurred in Ohio would have occurred in the child's first six months of life as to which she would not be expected to have any recall at all.   As the First District held, there was no showing that the lack of specificity prevented Williams from preparing his defense.   He did not offer any alibi defense regarding the months of November 1994 – May 1995.

The Second Ground for Relief should be dismissed.


**Ground Three:  Disclosure of Privileged Communications**


In this Third Ground for Relief, Williams claims his constitutional rights were violated when his privileged communications were revealed to the jury.  On appeal, Williams argued this claim purely as a violation of Ohio law, specifically Ohio Revised Code § 2317.02(C) and

2317.02(g); no constitutional claim was made as part of the third assignment of error (Appellant's Brief, Ex. 24 to Return of Writ, Doc. No. 11-2, PageID 239-40). Deciding that assignment of error, the First District held:

> We overrule Williams's third assignment of error, contending that the trial court erred by failing to exclude all references to statements Williams made to his church group about sexually abusing his stepdaughter. A review of the record demonstrates that the trial court sustained Williams's objections to the state's reference to these statements. Further, any error that may have been caused by the state trying to elicit these statements from the investigating officer was harmless because Williams's confession to the police contained sufficient evidence to convict him of the charged crimes.

*State v. Williams, supra,* PageID 276.

In the Return of Writ, the Warden argues that this is purely a state law claim and therefore not cognizable in habeas corpus (Doc. No. 11, PageID 61-63). Williams does not argue his Third Ground for Relief at all in his Traverse except to say he believed his statements were protected by confidentiality (Traverse, Doc. No. 14, PageID 1316).

Ground Three is without merit for a number of reasons. First of all, the statements were not admitted. When Detective Perry attempted to testify about them, they were properly excluded as hearsay. Secondly, the Warden is correct that habeas corpus relief extends only to constitutional violations and state court evidentiary rulings rarely rise to that level. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991).  Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988);  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983);  *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975).  Lastly, there is no federal constitutional right to have one's every expectation of confidentiality honored by the courts.

The Third Ground for Relief should be dismissed.


**Ground Four:  Admission of Other "Bad Acts" Evidence**


In his Fourth Ground for Relief, Williams claims his due process and fair trial rights were violated when the trial court admitted evidence of other bad acts he had committed which were wholly unrelated to the offenses for which he was on trial.

Williams raised this as his Fourth Assignment of Error on direct appeal, which the First District decided as follows:

> Williams contends, in the fourth assignment of error, that the trial court erred by allowing the state to introduce "other bad acts" evidence in an attempt to paint Williams as a pedophile. Any error that may have occurred in the admission of the bad-acts testimony was harmless in light of William's admissions that he had sexually abused his infant stepdaughter. The fourth assignment of error is overruled.

*State v. Williams, supra,* PageID 276.

Williams' argument in his Traverse reverts to the persistent theme of that document: Detective Perry was perjuring himself when he testified Williams admitted his abuse of the victim occurred in part in Ohio (Traverse, Doc. No. 14, PageID 1330-31).  This Court fails to understand how Perry's allegedly perjurious testimony related to venue would undermine the

court of appeals' harmlessness finding as to parts of Williams' own statement.

Although it is unstated, the First District was presumably applying the harmless beyond a reasonable doubt standard which Ohio courts apply on direct appeal. *State v. Morris*, 2014-Ohio-5052, 141 Ohio St. 3d 399 (2014), *citing State v. Crawford*, 32 Ohio St. 2d 254, 255 (1972); see also *State v. DeMarco*, 31 Ohio St. 3d 191, 195 (1987).    Constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt.  Rather, error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946).

The First District is not explicit about what possible error it found to be harmless, but this Court concludes no constitutional claim relating to the other bad acts evidence was presented to the state courts.  Appellant's Brief argues this assignment of error entirely in terms of Ohio R. Evid. 404(B) and cited neither United States constitutional provisions nor case law (Return of Writ, Doc. No. 11-2, PageID 240-43).  Thus any constitutional claim attempted to be made in the Fourth Ground for Relief is barred by Williams' procedural default in failing to fairly present the claim as a federal constitutional claim to the state courts.

Finally, even if the claim had been presented as a federal claim, it is without merit.  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*, 502 U.S. 62 (1991).

The Fourth Ground for Relief should be dismissed.

**Ground Five:  Failure to Demonstrate *Corpus Delicti***

In his Fifth Ground for Relief, Williams asserts he was denied due process and a fair trial when the State failed to demonstrate a *corpus delicti*.

Under Ohio law, before a confession to a crime is admitted in evidence, the State must introduce some evidence, independent of the confession, that a crime has been committed.  *State v. Maranda,* 94 Ohio St. 364 (1916); *State v. Van Hook,* 39 Ohio St. 3d 256 (1988).  As with the Fourth Assignment of Error, this claim was presented to the Ohio courts purely as a question of Ohio law.  On that basis, the Warden argues the Fifth Ground for Relief is not cognizable in habeas corpus.

Williams responds that the *corpus delicti* argument should therefore be "consolidated with Williams' sufficiency/manifest weight argument as it has no 'independent constitutional footing.'"  (Traverse, Doc. No. 14, PageID 1332.)  However, the *corpus delicti* rule is not an element of a criminal offense which must be proved beyond a reasonable doubt.  Instead, it dictates the order of proof in a case dependent on a defendant's confession.  And neither Williams' counsel on appeal nor Williams himself in the Traverse cites any authority under the United States Constitution requiring States to adhere to the *corpus delicti* rule.

The Fifth Ground for Relief should be dismissed.

**Ground Six:  Insufficient Evidence/Manifest Weight of the Evidence**

In his Sixth Ground for Relief, Williams argues that there was insufficient evidence of venue and that the jury's verdict on venue was against the manifest weight of the evidence.  This

claim was the Sixth Assignment of Error on direct appeal which the First District decided as follows:

> In his sixth assignment of error, Williams contests the sufficiency and weight of the evidence underlying his convictions. Specifically, Williams argues that the state did not prove venue for the charged offenses and did not prove sexual conduct for the charged rape offenses. After reviewing the record, in a light most favorable to the state, we hold that there was sufficient evidence from Williams's own statements to police to prove both venue and sexual conduct. See *State v. Waddy*, 63 Ohio St. 3d 424, 430, 588 N. E.2d 819 (1992). Further, after weighing the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by finding Williams guilty of the charged offenses. See *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Accordingly, the sixth assignment of error is overruled.

*State v. Williams, supra,* PageID 277.

The Warden argues that the manifest weight claim is not cognizable in habeas corpus (Return of Writ, Doc. No. 11, PageID 67).  Williams recognizes that distinction in the Traverse (Doc. No. 14, PageID 1332-33, citing *Tibbs v. Florida,* 457 U.S. 31 (1982).)  A claim that a verdict is against the manifest weight of the evidence does not state a claim for violation of the United States Constitution and thus is not cognizable in habeas corpus.

However, under the Fourteenth Amendment, a state criminal conviction must be supported by sufficient evidence on each element. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to
> groups who might view facts differently than we would. First, as in
> all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our
> judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d
> 618, 620 (6th Cir. 1993). Thus, even though we might have not
> voted to convict a defendant had we participated in jury
> deliberations, we must uphold the jury verdict if any rational trier
> of fact could have found the defendant guilty after resolving all
> disputes in favor of the prosecution. Second, even were we to
> conclude that a rational trier of fact could not have found a
> petitioner guilty beyond a reasonable doubt, on habeas review, we
> must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. See 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

The parties' arguments and the First District's opinion tend to confuse the concepts of venue and jurisdiction. Ohio Revised Code § 2901.12(A) provides "[t]he trial of a criminal case shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." In Ohio, the common pleas courts are the courts with subject matter jurisdiction to try felony criminal cases. See Ohio Rev. Code 2931.03; *State v. Lauharn*, 2012-Ohio-1572, ¶ 22, 2012 Ohio App. LEXIS 1382, **12 (2nd App. Dist. 2012); *Leyman v. Bradshaw*, 2015-Ohio-751, ¶ 13, 2015 Ohio App. LEXIS 699, **4 (5th App. Dist. 2015). The indictment in this case charges Williams with criminal conduct which is alleged to have occurred in Hamilton County, Ohio. Thus the Hamilton County Common Pleas Court was the proper venue for the trial of this case. The cited Ohio venue statute and Article I,

14

§ 10 of the Ohio Constitution serve much the same purpose as the vicinage clause of the Sixth Amendment:  it assures criminal trials will happen where the offense is alleged to have happened and with a local jury.  It was adopted in part to prohibit the British colonial practice of transporting alleged felons to England for trial.  There is no question of improper venue properly so called in this case.

The issue actually presented is the question of territorial jurisdiction.  Ohio does not have jurisdiction to punish criminal conduct which occurs outside the State of Ohio. See Ohio Rev. Code §2901.11; *State v. Rydbom*, 1998 Ohio App. LEXIS 1652 (4th App. Dist. 1998);   While territorial jurisdiction is not an "element" of the crimes of rape or gross sexual imposition, it is a fact which must be proved beyond a reasonable doubt if challenged in order to sustain a conviction.  The Warden does not dispute this constitutional requirement (Return of Writ, Doc. No. 11, PageID 67-70).

Instead, the Warden relies on Williams' admission in the initial police interview on October 15, 2010, that the sexual misconduct with A.W. began in Ohio.  *Id.* at PageID 69-70, citing Trial Transcript at 652, 667, 672, and 699.  The relevant testimony of Detective Perry is as follows:

> Q.     "Do you have a recollection of where Eric Williams told you he first started sexually molesting his stepdaughter [A.W.]?
>
> A.     "Yes.  My recollection during the conversation we had in Marie's apartment was that it started in Ohio.
>
> Q.     And are you certain of that?
>
> A.     Yes.  I have no doubt in my mind.
>
> Q.     And as far as this type of thing, when you talk to a defendant, listen to what they say and so forth, as far as where somebody says something happened, is that important to you, and why?

A.     Well, it's imperative because of jurisdiction.  If [A.W.] was
molested in another county or another state, I would call that state
to say this is the offense that occurred, this happened in your city,
this is your investigation.

I called Hamilton County right after this report was taken.
I talked to Detective Longworth, and I said this is the allegation
that we have; it happened in your city, so you guys have
jurisdiction on this.

I just got this confession, and here's the – here's the case
with a bow on it, and now I need your help from that point.  And I
asked Detective Longworth if she could try to identify where
[A.W.] is.

At that point I had no idea where [A.W.] lived.  I didn't
know anything about her family or her parents, other than he name
and her date of birth and Sheri's information.

Q.     When you were going through that, was the initial place
that Eric Williams confessed to you that he molested [A.W.] at
Sheri's parents' house when they first lived there after [A.W.] was
born?

A.     Yes, sir.

Q.     And that's the address you came up with on Deerfield
which you realized was in Hamilton County?

A.     Yes, sir.

Q.     And he admitted to you that's where it started?

A.     Yes, sir.

(Trial Tr., Return of Writ, Doc. No. 11-13, PageID 1017-18.)  Later he again testified on direct

that he called Hamilton County because he was told by Williams that that's where the abuse

happened.  *Id.*  at PageID 1032-33.

Williams attacks this testimony in his Traverse by calling it "perjured" at least fourteen

times.  He attempts to prove that by noting that Detective Perry did not record this statement,

although it is his usual practice to record statements from defendants (Traverse, PageID 1317,

1333).  He also noted that Perry's testimony about what Williams said on October 15, 2010, was

uncorroborated by any other the other persons who were present.  *Id.*  at PageID 1317.  These are all decent arguments to be made to a jury about why it should not believe Perry's testimony about what Williams said about where the abuse first happened.  But the question of credibility is for the jury and the jury here obviously believed Detective Perry.  While it is correct that no one else who was present at the October 15, 2010, interview testified to corroborate Perry's testimony, it is also true that no one who was present testified to contradict it, including both Williams and his fiancée/girlfriend, Marie Martin.  While Williams had an undoubted right not to take the stand, not testifying about what happened during the interview was his choice.

"On habeas review pursuant to § 2254, a 'court faced with a record of historical facts that supports conflicting inferences [and *a fortiori* findings] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), *quoting McDaniel v. Brown*, 558 U.S. 120 (2010).  The testimony of a crime victim, standing alone and uncorroborated, is sufficient for conviction.  *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The  testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007).  The admission of the perpetrator, recounted by a disinterested police officer, is therefore also sufficient.

In the state court Williams also asserted there was insufficient evidence of sexual conduct to allow conviction.  The First District found to the contrary and Williams does not pursue that claim in his Traverse.  The Court therefore treats it as abandoned.

The Sixth Ground for Relief should therefore be dismissed.

**Ground Seven:  Prosecutorial Misconduct**

In his Seventh Ground for Relief, Williams claims he was denied a fair trial by the prosecutor's misconduct.  This was Williams' Seventh Assignment of Error on direct appeal which the First District decided as follows:

> In the seventh assignment of error, Williams maintains that the trial court erred by denying his motion for a mistrial based on prosecutorial misconduct. But a prosecutor's conduct during trial is not grounds for reversal unless the conduct deprives the defendant of a fair trial. *State v. Hirsch*, 129 Ohio App.3d 294, 310, 717 N.E.2d 789 (1st Dist. 1998). After reviewing the record, we cannot say that Williams was denied a fair trial. The trial court sustained objections to inappropriate comments made by the prosecutor during voir dire and to references during trial to the statements Williams had made to his church group, and gave curative instructions to the jury. In light of those curative instructions, the trial court did not abuse its discretion in denying Williams's motion for a mistrial. *See State v. Ahmed*, 103 Ohio St.3d 27, 2004-0hio-4190, 813 N.E.2d 637, ¶ 92.

*State v. Williams, supra*, PageID 277-78.

The Warden argues this decision by the First District is an objectively reasonable application of clearly established Supreme Court precedent, particularly *Darden v. Wainwright*, 477 U.S. 163 (1986), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

In his Traverse, Williams does not dispute what the controlling law is (Doc. No. 14, citing, *inter alia*, *Darden* and *Donnelly*, PageID 1335).  Rather, he attempts to broaden the claim by accusing the prosecutor of knowingly using or failing to correct Detective Perry's allegedly perjured testimony to establish territorial jurisdiction. *Id.*  at PageID 1336, citing *Napue v. Illinois,* 360 U.S. 264 (1959), *Mooney v. Holohan*, 294 U.S. 103 (1935), and *Alcorta v. Texas,* 355 U.S. 28 (1957).  While those cases do stand for the proposition for which they are cited,

Williams never claimed in the Ohio courts that the prosecutor suborned perjury from Perry or failed to correct Perry's false testimony.  As the record stands, the jury and trial judge accepted Perry's testimony and Williams has not proved that it is perjured.

Ground Seven should be dismissed.


**Ground Eight:  Convictions Violate Double Jeopardy and Ohio's Allied Offense Statute**


In his Eighth Ground for Relief, Williams asserts that his convictions for multiple counts of rape and his consecutive sentences violate both Ohio's allied offense statute, Ohio Revised Code § 2941.25, and the Double Jeopardy Clause of the United States Constitution.

Ohio Revised Code § 2941.25 provides:

> (A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.


The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim.  *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010).  "What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment.  Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'"  *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Williams was charged with multiple counts of sexual misconduct based on his admission that he molested A.W. fifty or sixty times[2] between her birth in November 1994 and sometime in 1998.  The indictment charges that four of these incidents happened between April 1995 and October 1995.  Apparently based on Williams' ability to prove that he had moved to Campbell County, Kentucky, in May 1995, the indictment was orally amended, without objection, to exclude June, July, August, September, and October 1995 (Trial Tr., Return of Writ, Doc. No. 11-10, PageID 622).  However, no change was made in the number of offenses alleged.

Williams' behavior alleged in each count of the Indictment is not the "same conduct" as that phrase is used in Ohio Revised Code § 2941.25.  Rather, similar conduct is alleged to have occurred on five separate occasions in April and May 1995.  Rape and gross sexual imposition

---

[2] In his different statements to Detective Perry, he makes various estimates of the total number of times, based on his reconstruction of the events between A.W.'s birth and his confessions in Texas.

are allied offenses of similar import, but here they were alleged to have been committed separately, i.e., on separate occasions with the same victim. The First District was clearly correct in finding that there was no violation of Ohio Revised Code § 2941.25 because this is not conduct all occurring at the same time but being artificially divided by the prosecutor into separate crimes.  Because the separate punishments do not violate Ohio Revised Code § 2941.25, they also do not violate the Double Jeopardy Clause.  *Jackson, supra.*

In addition to the allied offenses and Double Jeopardy claims, Williams also raises a due process claim, to wit, that the indictment did not give him sufficient notice of the charges because it did not specify any distinction among the charges.  In the court of appeals he relied on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005).  The counts of the indictment here suffer from the same problem as the counts of the indictment in *Valentine*:  they are "carbon copies" of each other, charging five undifferentiated counts of rape and five undifferentiated counts of gross sexual imposition in April-May 1995.  The relevant state court proceedings in *Valentine* were described by the Sixth Circuit as follows:

> On May 25, 1996, a grand jury in Cuyahoga County issued a forty-count indictment, charging Valentine with twenty counts of child rape and twenty counts of felonious sexual penetration of a minor. According to the indictment, all forty offenses occurred between March 1, 1995 and January 16, 1996. Each rape count alleged that Valentine "unlawfully engaged in sexual conduct with [the stepdaughter] not his spouse by purposely compelling her to submit by the use of force or threat of force, [the stepdaughter] being under the age of 13 years, to-wit: d.o.b. 11-18-87." No further information was included to differentiate one count from another. Likewise, each felonious sexual penetration count was identical, alleging that Valentine "unlawfully without privilege to do so inserted a part of the body, an instrument, apparatus or other object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the stepdaughter] not the spouse of the offender and who was under the age of 13 years, to-wit: d.o.b. 11-18-87, by purposely compelling her to submit by force or threat of force." The bill of particulars did not offer further differentiation among the counts.

21

Instead, it merely restated the allegations and identified the family home as the location of all forty offenses.

At the 1996 jury trial, the only witness to testify as to the number of assaults committed by the defendant was the eight-year-old victim herself. She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions. The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom. She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions. As the Petitioner points out, the victim altered her numbers somewhat during cross-examination.

395 F.3d at 629.  As noted above, the Sixth Circuit found no problem with the date range in the

*Valentine* indictment.  Instead, it held

The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places.  If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place.   Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.

395 F.3d at 632-33.  Unlike Valentine, Williams stands convicted on his own admission of

sexually abusing A.W. fifty or sixty times, not on any testimony from A.W. about "typical"

offenses.  Indeed, as the First District noted, Williams was not hampered in his defense by the

lack of specificity in presenting an alibi.  Instead, he claimed at trial and emphasizes strongly in

his Traverse that all the abuse happened in Kentucky.  If the jury has believed him, that would

have been a complete defense, because Ohio has no territorial jurisdiction to punish offenses

22

occurring in Kentucky.  But there was contrary competent evidence – his admission on October 15, 2010, that the misconduct began in Ohio.  There was also competent evidence from others that he had private access to the victim while they were still living in Ohio.  He calls Detective Perry a perjurer because Perry's recording device "conveniently" did not work on October 15, 2010.  The Court cannot help noting how convenient for Williams it is that he now claims he did not begin abusing his infant stepdaughter until moving to Kentucky.  The point is that the credibility of witnesses is for the jury to assess.

The Eighth Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 16, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).